IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ERIN BURCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:17-cv-113-TFM |
| ) | [wo] |
| NANCY A. BERRYHILL,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **OPINION**

Following administrative denial of her applications for Disability Insurance Benefits under Title II and Supplemental Security Income benefits under Title XVI of the Social Security Act beginning March 25, 2013, Erin Burch ("Burch" or "Plaintiff") received a requested hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. (Tr. 29-46). When the Appeals Council rejected review, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Judicial review proceeds pursuant to 42 U.S.C. § 405(g), 42 U.S.C. § 1383(c)(3), and 28 U.S.C. § 636(c), and for reasons herein explained, the Court **AFFIRMS** the Commissioner's decision denying supplemental security income and disability benefits.

**I. STANDARD OF REVIEW**

Burch seeks judicial review of the Commissioner of Social Security Administration's decision denying her application for disability insurance benefits and supplemental security

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

income benefits. United States district courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405 (2006). The court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. In review of a social security case, the court will use the substantial evidence standard to affirm the Commissioner's decision if substantial evidence exists to support the decision. *Mitchell v. Commissioner,* 771 F.3d 780, 781 (11th Cir. 2014) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)). The court is limited in its review; therefore the court is "preclude[d] [from] deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1986)). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*); *Moreno v. Astrue,* 366 Fed. Appx. 23, 26-27 (11th Cir. 2010) ("failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.") (Citation omitted).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427, 28 L.Ed.2d 842 (1971)). If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (Citation omitted). The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted). There is no presumption that the Secretary's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## II. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general

---

[2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3] Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3). However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled. 20 C.F.R. §§ 404.1520;[4] *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th

---

[3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues. *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[4] For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time of the ALJ's decision and the filing of this appeal.

Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456 (11th Cir. June 10, 2015). The ALJ determines:

    (1)    Whether the claimant is currently engaged in substantial gainful activity;

    (2)    Whether the claimant has a severe impairment or combination of impairments;

    (3)    Whether the impairment meets or exceeds one of the impairments in the listings;[5]

    (4)    Whether the claimant can perform past relevant work; and

    (5)    Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4. *See Ostborg v. Comm'r of Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39. A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden. Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). RFC is what the claimant is still able

---

[5]     *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations. *Phillips*, 357 F.3d at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. In order to do this, the ALJ can either use the Medical Vocational Guidelines[6] ("grids") or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. *Id*. at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. Otherwise, the ALJ may use a vocational expert. *Id*. A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments. *Id*. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

### III. BACKGROUND AND PROCEEDINGS

The ALJ determined Burch had not engaged in substantial gainful activity since December 20, 2012, the alleged onset date. (Tr. 34). The ALJ further concluded Burch suffered from severe cervicalgia; lumbago, degenerative disc disease of the cervical and lumbar spines and "status post" car accident. (Tr. 34). However, the ALJ found Burch did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 4040,

---

[6] *See* 20 C.F.R. pt. 404 subpt. P, app. 2

Subpart P, Appendix 1. (Tr. 35). The ALJ opined Burch had the residual functional capacity ("RFC") to perform

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can occasionally climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds. She can frequently balance. She can occasionally kneel, crouch and stoop. She cannot crawl. She can frequently reach, bilaterally, in all directions (other than overhead); however, she can occasionally reach overhead,-bilaterally. She has no limitations handling, fingering, and feeling. She must avoid concentrated exposure to extreme temperatures, wetness and vibration. She should avoid all exposure to unprotected heights and hazardous machinery.

(Tr. 35). Indeed, sedentary work involves lifting no more than 10 pounds at a time and walking and standing are required occasionally. 20 CFR 404.1567(a) and 416.967(a).

Based upon the foregoing RFC assessment, the ALJ determined Burch was not capable of performing any of her past relevant work. (Tr. 40). Relying upon vocational expert testimony, the ALJ concluded there was other work available in significant numbers in the national economy which Burch could perform despite the stated RFC limitations. (Tr. 41). Accordingly, the ALJ concluded Burch had not been under a disability as defined in the Social Security Act from December 20, 2012, the alleged onset date, through the date of the decision. (Tr. 42). Burch appealed the ALJ's decision to the Appeals Council and after consideration of additional evidence submitted by Burch, her request for review was denied. (Tr. 15-17). Thus, Burch exhausted all her administrative remedies and now appeals the Commissioner's final decision.

**IV. STATEMENT OF FACTS**

Burch was 20 years old at the time of her alleged onset date, December 20, 2012, a "younger individual age 18-49," and remained so through the date of the ALJ's denial. Burch has a High School Education and worked in the relevant past as a waitress and hostess. (Tr. 40). She has a congenital abnormality of her spine, "severe" scoliosis. In April 2005 when she was 13 years old, she had extensive surgery involving a ten-level fusion of the vertebrae from thoracic 3 ("T3")

through lumbar 2 ("L2") with Harrington Rods fixation.[7]   Following the fusion, Burch reported back pain in September 2008 after falling down steps. (Tr. 253).  In January and February 2009, she reported pain worsening in her upper, middle and lower back during the last seven months. (Tr. 262, 311).  In August 2009, she reported tailbone pain after falling two weeks prior. (Tr. 252, 305).  Later in June 2011, she reported back and stomach pain with a severity level 9 out of 10. (Tr. 277).  In November 2011, she reported neck and shoulder pain; records noted a referral for pain management.  (Tr. 268-269).  In February 2012, records showed Burch "has diffuse muscuoloskeletal and back pain with just a single level psuedarthrosis." but noted the rest of her fusion was solid.  (Tr. 257).

In December 2012, Plaintiff presented to the Montgomery Spine Center where she was evaluated by Dr. Timothy A. Holt.  She was diagnosed with radiculitis-lumbar, scoliosis and pseudathrosis.  (Tr. 354-56). She received physical therapy for lumbago, thoracic spine and bilateral sciatica pain between February and December 2012. (Tr. 36, 319-37).  In February 2013, Burch reported left side numbness and continued low back pain. (Tr. 353).  In March 2013, when she was seven months pregnant, she reported neck pain and MRIs showed "a degenerative disc at L4-L-5" and "disc herniation at C6-C7".  (Tr. 352).   Dr. Holt discussed surgery with Burch and prescribed a brace.  (Tr. 352).

In April 2013, following the birth of her baby, Burch was seen by orthopedic surgeon, Dr. Christopher Heck for neck and low back pain.  He noted Burch had no physical therapy since the birth of her child, has not had injections and cannot tolerate anti-inflammatories.  (Tr. 360). Physical examination of Plaintiff's neck demonstrated full flexion and extension, bilateral rotation,

---

[7] Harrington Rods are surgical implants used to stretch the spine to correct an abnormal spinal curvature.  The Rods are attached to the spine using hooks at the top and bottom of the spine. (Doc. 14 at n.5; Tr. 252-53, 366).

and lateral flexion without instability or weakness; full range of motion; and full hyperextension. (Tr. 361). Physical examination of Burch's spine revealed no coronal or sagittal imbalance, mild hyperextension, negative straight leg raise bilaterally, negative FABER sign bilaterally, and a healed thoracolumbar scar. (Tr. 361). Plaintiff's bilateral lower extremities demonstrated no deformity; full active range of motion of the hips, knees, ankles, and toes without instability; and 5/5 motor strength. (Tr. 361). She also had 5/5 bilateral upper extremity motor strength in all motor groups. (Tr. 361). Neurologically, she had normal coordination and intact sensation to the light touch. (Tr. 361). X-rays indicated no severe degeneration loss of cervical lordosis. (Tr. 361). Dr. Heck diagnosed "Status post T3 to L2 instrumented posterior spinal fusion for scoliosis, Cervicalgia, Lumbago." He recommended physical therapy, no surgery and prescribed Tylenol. (Tr. 361-62).

On December 2, 2013, Burch was involved in an "almost head on" automobile collision. Following the collision, she was taken to the Emergency Room by private vehicle for treatment of "pain to whole back, left hip and abdominal wall, no neuro complaints, no other complaints, ambulatory at scene." (Tr. 417-28). Later in December 2013, Burch saw Karol B. Woodling, D.C., for chiropractic treatment through March 2014 for her neck pain, mid back pain, low back pain, and headache. (Tr. 37, 373-406). Burch reported a "slight decrease in cervical and lumbar complaints. Still having pain with cervical flexion {sic}, extension and at end range rotation . . . and having difficulty performing normal ADL's due to pain." (Tr. 37, 387). She noted that "patient should reach maximum chiropractic improvement within 3 months." (Tr. 378). On January 2, 2014, a physician examined Burch and diagnosed preexisting (aggravated by a car accident) cervical-lumbar strain/sprain/radiculopathy and prescribed ice, chiropractic treatment and medication. (Tr. 375).

Burch testified that she was uninsured after May 2013 and so she did not have regular medical treatment. (Tr. 51). She presented to an Emergency Room in July 2014 complaining of low back pain. (Tr. 37, 412). A physical examination revealed musculoskeletally that she had a "[n]ormal ROM, normal strength, and no swelling." (Tr. 37, 414). Examination of her back revealed "[n]ormal range of motion, Normal alignment. Thoracic: Midline, tenderness, Lumbar: midline, moderate tenderness, swelling." (Tr. 37, 414). She demonstrated no neurological deficits and normal sensation and motor function. (Tr. 37, 414). A cervical spine CT scan indicated no acute abnormality, and a thoracic spine X-ray was normal, with normal alignment and normal disc spaces. (Tr. 37, 414-15). Upon discharge it was noted that her pain was "decreased" and her condition "improved". (Tr. 37, 416). Following her emergency room visit, Burch was seen at a Health Department clinic. (Tr. 57-58).

## VI. ISSUES

Burch raises two issues on appeal:

(1) Whether substantial evidence supports the Administrative Law Judge's residual functional capacity assessment.

(2) Whether recent MRI results submitted to the Appeals Council undermine the substantial evidence supporting the Administrative Law Judge's decision.

*See* Doc. 15 at p. 1.

## VII. DISCUSSION AND ANALYSIS

**A. Whether substantial evidence supports the administrative law judge's residual functional capacity assessment.**

Plaintiff first argues that the ALJ failed to consider all the relevant evidence in determining her RFC. Specifically, Burch argues that the ALJ committed reversible error because he never

mentioned the state agency May 28, 2013 RFC assessment by Dr. Marcus Whitman, M.D. (Tr. 69-88). In that assessment, Dr. Whitman found Burch was limited to a reduced range of light work. (Tr. 74-75). Ordinarily, an ALJ's failure to explain the particular weight given to the medical opinions provided is reversible error. *Sharfarz v. Bowen,* 825 F. 2d 278, 279-280 (11th Cir. 1987). However, when the ALJ's error does not affect its ultimate findings, the error is harmless, and the ALJ's decision will stand. *See Diorio v. Heckler,* 721 F. 2d 726, 728 (11th Cir. 1983). Because Dr. Whitman's opinion as to Burch's RFC was actually less restrictive than the ALJ's RFC finding that Burch could perform a reduced range of sedentary work, the ALJ's failure to explain the weight given to Dr. Whitman's opinion is harmless. Moreover, the ALJ's discussion of the medical evidence and other evidence supporting his determination of Plaintiff's RFC and his reasoning therefore is clearly and thoroughly presented, such that this Court can understand why the ALJ made his decision. (Tr. 35-40); *See Colon v. Colvin*, 660 Fed. App'x 867, 870 (11th Cir. 2016) (Affirming ALJ's decision even though the ALJ failed to mention certain doctors' findings, but where those medical opinions were consistent with the ALJ's conclusion and the ALJ's decision did not leave the Court wondering why the ALJ concluded as he did.)

Burch also argues that the ALJ erred in his evaluation of her statements regarding symptoms related to her congenital spine impairment. The Social Security Regulations provide that a claimant's subjective complaints of pain, alone, cannot establish disability. Rather the Regulations describe additional objective evidence that is necessary to permit a finding of disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529. Interpreting these regulations, the Eleventh Circuit has articulated a pain standard that applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. This standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence

confirming the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Foote v. Chater,* 67 F. 3d 1553, 1560 (11th Cir. 1995); *Holt v. Sullivan,* 921 F.2d 1221, 1223. (11th Cir. 1991).

In this circuit, the law is clear. The Commissioner must consider a claimant's subjective testimony of pain if he finds evidence of an underlying medical condition and the objectively determined medical condition is of a severity that can reasonably be expected to give rise to the alleged pain. *Mason v. Bowen,* 791 F.2d 1460, 1462 (11th Cir. 1986); *Landry,* 782 F. 2d at 1553. Thus, if the Commissioner fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, the Commissioner has accepted the testimony as true as a matter of law. This standard requires that the articulated reasons must be supported by substantial reasons. If there is no such support, then the testimony must be accepted as true. *Hale,* 831 F.2d at 1012.

The ALJ stated

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

(Tr. 37). The ALJ recognized that Plaintiff testified to disabling pain to the point where she can not complete her chores, but found that inconsistent statements in her function report undermined her credibility. (Tr. 37). He further found that Burch's activities of daily living did not support her claims of disability. (Tr. 38). He also noted that Plaintiff testified to a pain level of 8 out of 10 but also reported that she takes no medication. (Tr. 38). Finally, the ALJ concluded that the objective medical evidence did not support a disabling impairment. (Tr. 38). The Court has carefully conducted an independent review of the record and concludes that the record supports

the ALJ's conclusion as to Burch's RFC. Indeed, Burch's treatment history undermines her subjective complaints of disabling symptoms. Plaintiff's doctors prescribed medication, a brace, and physical therapy and recommended against surgery. (Tr. 36-40, 319-37, 352, 360-62, 373-406, 416). A physical exam of Plaintiff conducted by Dr. Christopher Heck, orthopedic surgeon, was mostly normal. (Tr. 361). Also, Emergency Room records from July 2014 reported that an exam of Plaintiff's back revealed a normal range of motion and normal alignment and the musculoskeletal exam revealed a normal range of motion, normal strength and no swelling. (Tr. 414). Accordingly, the Court concludes that substantial evidence supports the ALJ's determination as to the limited effects of Plaintiff's impairments. *Winschel*, 631 F.3d at 1178.

**B. Whether recent MRI results submitted to the Appeals Council undermine the substantial evidence supporting the Administrative Law Judge's decision.**

After the ALJ issued his decision on November 20, 2014, Burch submitted to the Appeals Council MRI results dated August 8, 2014 in connection with her request for review of the ALJ's decision. (Tr.1-6, 431-34). The Appeals Council stated that "[a]fter considering the additional information, we found no reason under our rules to review the Administrative Law Judge's decision." (Tr. 1). The law is settled; a court considers evidence submitted to the Appeals Council with the record as a whole to determine whether substantial evidence supports the ALJ's decision. *See Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F. 3d 1253, 1266 (11th Cir. 2007). Based upon this Court's independent review of the record, including the newly submitted evidence, the Court concludes that Burch failed to show that the August 2014 MRI results, when considered with the record as whole, rendered the ALJ's decision erroneous. Indeed, "it is well-established that it is the functional limitations from an impairment, and not the diagnosis of an impairment that [are] determinative in an evaluation of a disability." *Holloman v. Astrue,* 2010 WL 3361970 *3 (M.D.

Fla. August 25, 2010).  The Court concludes that the new MRI results do not establish additional limitations or otherwise undermine the substantial weight supporting the ALJ's decision.  Thus, the Court concludes that Plaintiff's argument for reversal of the ALJ's opinion based on new evidence fails.

## VIII .  CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the Court AFFIRMS the Commissioner's decision.  A separate order will be entered.

DONE this 23rd day of May, 2018.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE